

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Peticionario<br><br>              v.<br><br>Jorge L. Pérez Adorno<br><br>    Recurrido | Certiorari<br><br>2010 TSPR 69<br><br>178 DPR ____ |

Número del Caso: CC-2006-597


Fecha: 5 de mayo de 2010


Tribunal de Apelaciones:

        Región Judicial de Bayamón

Juez Ponente:        Hon. José Miranda de Hostos

Oficina del Procurador General:

                Lcda. Zulema E. Martínez Álvarez
                Procuradora General Auxiliar

Abogada de la Parte Recurrida:

                Lcda. Nereida Rivera Navarro


Materia: Art. 173 B C.P. y Otros


Este documento constituye un documento oficial del    Tribunal Supremo que está sujeto a los cambios y correcciones del pr    oceso de compilación y publicación oficial de las decisiones    del Tribunal. Su distribución electrónica se hace como un servici    o público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                      CC-2006-597

Jorge L. Pérez Adorno

    Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 5 de mayo de 2010.

La Regla 192.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 192.1, permite que un acusado ataque la validez de la sentencia en su contra si puede demostrar que se le violaron sus derechos. En este caso, el Tribunal de Primera Instancia emitió dos dictámenes contradictorios sobre un mismo acuerdo de alegación de culpabilidad lo que hizo imposible que se cumpla parte del acuerdo. Por eso resolvemos que el acusado tiene derecho a rechazar el acuerdo y reclamar bajo la Regla 192.1, id., que se deje sin efecto la sentencia condenatoria y se le juzgue en los méritos.

I

El Sr. Jorge L. Pérez Adorno fue acusado de cometer varios delitos en el Tribunal de Primera Instancia, Sala de Bayamón. El 27 de diciembre de 2001, el Ministerio Público presentó denuncias por los delitos de robo, conspiración, agresión agravada grave, apropiación ilegal agravada, uso de disfraz y amenaza, bajo el Código Penal de 1974, 33 L.P.R.A sec. 3001 y ss. Además, se presentaron denuncias por varios artículos de la Ley de Armas, Ley Núm. 17 de 19 de enero de 1951, 25 L.P.R.A. secs. 455 y ss., para un total de treinta (30) cargos. El 9 de enero de 2002, Pérez Adorno renunció por escrito a la vista preliminar y el Ministerio Público presentó las correspondientes acusaciones.

Mientras se procesaba al acusado, Pérez Adorno, en la sala 605 del tribunal, el Ministerio Público presentó otras denuncias en las que se le imputaron los delitos de robo, conspiración, secuestro, daños e infracciones a la Ley de Armas. El 29 de octubre de 2002 se determinó causa probable para el arresto y se señaló la vista preliminar para el 5 de noviembre de 2002. Ante la incomparecencia de Pérez Adorno a la vista preliminar, se determinó causa probable para acusar.

Luego de estos incidentes, el 14 de noviembre de 2002 el acusado, Pérez Adorno, y el Ministerio Público suscribieron un "Convenio de alegación preacordada". Este acuerdo dispuso:

Comparecen de una parte el Departamento de Justicia de Puerto Rico, representado por el FISCAL JESÚS PELUYERA SANTIAGO y de otra parte JORGE L. PÉREZ ADORNO, consienten al [sic] siguiente:

1. Que el señor Pérez Adorno hará alegación de culpabilidad por el delito de robo que tiene pendiente ante la sala 605 para una pena de diez años por los hechos ocurridos en Vega Alta, P.R., el 24 y 30 de octubre y el 24 de noviembre de 2001 y otros casos de robo pendientes que totalizan diez cargos de Robo, Ley de Armas, una conspiración, una agresión agravada grave, una apropiación ilegal agravada, uso de disfraz y amenaza. **Además hará alegación de culpabilidad en los siguientes casos de robo ocurridos que están pendientes en el tribunal.** [sic] Relacionados con hechos ocurridos el 24 de septiembre de 2001, el 12 de octubre de 2001, el 22 de octubre de 2001, el 28 de octubre de 2001, el 12 de noviembre de 2001 y el 15 de noviembre de 2001....

Anejo II de la Solicitud de *certiorari*, pág. 69-72 (énfasis suplido).

Conforme con lo anterior, Pérez Adorno acordó hacer una sola alegación de culpabilidad por todos los delitos presentados en su contra en el Tribunal de Primera Instancia, Sala de Bayamón, a saber: (1) los delitos presentados ante la sala 605 y (2) los casos de robo "pendientes en el tribunal relacionados con hechos ocurridos el 24 de septiembre de 2001, el 12 de octubre de 2001, el 22 de octubre de 2001, el 28 de octubre de 2001, el 12 de noviembre de 2001 y el 15 de noviembre de

2001". Ibíd. Como parte de ese convenio, Pérez Adorno se comprometió a poner a disposición del Ministerio Público cualquier evidencia documental e información que le fuera requerida sobre investigaciones criminales que se estaban realizando en otros casos. Además, Pérez Adorno se comprometió a declarar como testigo en el foro local o federal, tanto en el ámbito criminal, civil o administrativo, sobre tales investigaciones. A cambio de su testimonio y su alegación de culpabilidad, las partes acordaron establecer una pena máxima de diez (10) años de cárcel, concurrente entre sí en todos los cargos, en los cuales Pérez Adorno se declararía culpable.

Ese mismo día se presentó el acuerdo en la sala 605. El juez a cargo de dicha sala, Hon. Edwin Ruiz González, aprobó el acuerdo y aceptó la alegación de culpabilidad del acusado en los casos ante su consideración. Es decir, el tribunal aceptó el acuerdo parcialmente y pospuso el dictamen de la sentencia, ya que el acusado había renunciado a los términos de juicio rápido.

Luego de esto, el 27 de diciembre de 2002, el Ministerio Público presentó las acusaciones por los otros delitos incluidos en el acuerdo, esta vez ante una sala distinta del mismo tribunal, la sala 602.[1] En la

---

[1] El Ministerio Público presentó acusaciones adicionales ante una tercera sala, la 601. En dicha sala las partes presentaron el acuerdo. El juez de dicha sala, Hon. Julio Soto Ríos, aceptó el acuerdo y la correspondiente
(continúa...)

referida sala 602 la representación legal del acusado no era la misma que la encargada de su defensa en la sala 605.

Según surge del expediente, luego de varios incidentes procesales se llamó el caso para juicio en la sala 602. El acusado no compareció a dicha vista. La representación legal del recurrido le informó al juez de la sala 602 sobre el convenio de alegación preacordada suscrito con el Ministerio Público y el juez de dicha sala lo examinó. Ante la incomparecencia del acusado a dicha vista, el tribunal pospuso el acto de alegación y le advirtió al Ministerio Público que no aceptaba el acuerdo porque la pena acordada era contraria a derecho.

El 18 de septiembre de 2003 se llamó el caso para juicio, pero nuevamente el acusado no compareció. El juez de dicha sala señaló, nuevamente, que no se aceptó el acuerdo porque era contrario a derecho. Acto seguido, la representación del acusado solicitó que se pospusiera el acto de alegación y el Ministerio Público señaló que se "oponía a que se le tomara la alegación de culpabilidad". Apénidice de la Solicitud de *certiorari*, págs. 123-124. En esta vista, la representación del acusado solicitó la desestimación de los casos bajo la Regla 64(n) de Procedimiento Criminal, <u>supra</u>, R. 64(n). El juez de dicha sala desestimó los casos presentados. El Ministerio Público recurrió entonces de esa

_____

alegación de culpabilidad para el delito de robo imputado en esa sala.

determinación ante el Tribunal de Apelaciones. Este último revocó la determinación del Tribunal de Primera Instancia y devolvió el caso para la continuación de los procedimientos. Una vez devuelto el caso, el juez de la sala 602 declaró el sobreseimiento de los casos bajo la Regla 247(b) de Procedimiento Criminal, ibíd, el 20 de enero de 2005.

Mientras la revisión sobre la desestimación de los casos presentados en la sala 602 se revisaba en el Tribunal de Apelaciones, el juez de la sala 605 procedió a dictar sentencia el 20 de mayo de 2004, conforme con la resolución de 14 de noviembre de 2002. El acusado no compareció y el juez procedió a dictar sentencia de una pena máxima de diez (10) años de cárcel, concurrente entre sí en todos los cargos presentados en esa sala en los cuales el acusado se declaró culpable.

Ante esta situación, la defensa presentó en la sala 602 una moción en la que alegó la ilegalidad de la sentencia y solicitó que se dejara sin efecto la alegación, ya que el acuerdo de alegación de culpabilidad se dejó sin efecto una vez el Ministerio Público alegadamente "retiró" el convenio en la sala 602. El Ministerio Público se opuso y alegó que la sentencia fue dictada conforme a derecho, porque el acuerdo se "retiró" en la sala 602 y no en la sala donde se dictó la sentencia contra el acusado. El juez de la sala 605 denegó de plano la moción presentada y el acusado recurrió ante el Tribunal de Apelaciones. Dicho

foro revocó la determinación del Tribunal de Primera Instancia y ordenó la celebración de una vista a los efectos de determinar si procedía el relevo de la sentencia bajo la Regla 192.1 de Procedimiento Criminal, id., R. 192.1.

El juez de la sala 605 celebró la correspondiente vista y según la prueba desfilada, determinó que el acusado fue quien "rompió el acuerdo" entre la fiscalía y la defensa. El juez determinó que en uno de los casos donde el acusado se comprometió a ser testigo del Pueblo, el acusado indicó que "no iba a venir al juicio", y ello ocasionó que se desestimaran los cargos, por incomparecencia de la prueba de cargo. Por lo anterior, el juez denegó la solicitud del acusado al amparo de la Regla 192.1, ibíd. Sin embargo, el juez no evaluó el rechazo del acuerdo por parte del juez de la sala 602. Este rechazo ocurrió antes de que el Ministerio Público alegadamente "retirara" el acuerdo presentado por las partes.

Inconforme, el acusado presentó un recurso de certiorari ante el Tribunal de Apelaciones en el que señaló que procedía el relevo de la sentencia dictada en su contra toda vez que la alegación de culpabilidad que dio base a la sentencia fue producto de un acuerdo que se dejó sin efecto. Señaló que el Ministerio Público "retiró" la oferta el 18 de septiembre de 2003 en la sala 602. Además, señaló que erró el Tribunal de Primera Instancia en la apreciación de la prueba al determinar

que el acusado incumplió el acuerdo. El Ministerio Público no compareció. Eventualmente, el Tribunal de Apelaciones revocó al Tribunal de Primera Instancia y determinó que como el Ministerio Público retiró el acuerdo, éste quedó sin efecto y el tribunal no podía dictar sentencia a base de la alegación de culpabilidad. Se dejó sin efecto la sentencia dictada y la alegación de culpabilidad, y se ordenó que se juzgara al acusado en los méritos por los delitos según fueron presentados por el Ministerio Público. En ningún momento el Tribunal de Apelaciones evaluó el rechazo del acuerdo por parte del juez de la sala 602.

Ante esta situación, el Ministerio Público acudió ante nos mediante un recurso de *certiorari* en el que señaló que erró el Tribunal de Apelaciones al dejar sin efecto una sentencia válidamente dictada. Añadió que el retiro de la oferta se llevó a cabo en la sala 602 y no en la sala 605, donde se dictó sentencia, por lo que no hubo en esa sala un retiro del acuerdo aceptado. Arguyó, además, que como cuestión de derecho el Ministerio Público no podía retirar su oferta porque ya había sido aceptada por el tribunal en otra sala, la 602. Por su parte, el recurrido Pérez Adorno señaló que el Tribunal de Apelaciones actuó conforme a derecho ya que el retiro de la oferta dejó sin efecto el acuerdo y por lo tanto, la alegación de culpabilidad se hizo a base de un acuerdo ineficaz.

II

En este caso, el acusado-recurrido Pérez Adorno presentó una moción -que se acogió como una solicitud al amparo de la Regla 192.1, id.- en la que señaló que la sentencia era ilegal porque el acuerdo de alegación de culpabilidad se dejó sin efecto en una sala distinta a aquélla donde se dictó la sentencia. Según el acusado, la razón por la que el acuerdo de alegación es ineficaz es que el Ministerio Público, alegadamente, "retiró" el acuerdo en la sala 602 después de que había sido aceptado anteriormente por el juez de la sala 605. Sin embargo, conforme surge del expediente ante nuestra consideración, el juez de la sala 602 rechazó el acuerdo de alegación de culpabilidad antes de que el Ministerio Público lo "retirara". En ese sentido, no cabe hablar del "retiro" por parte del Ministerio Público ya que el acuerdo de alegación de culpabilidad fue rechazado por el juez de la sala 602. El Ministerio Público no podía retirar un acuerdo rechazado.

A la luz de estos hechos, lo que procede evaluar es si, en efecto, la sentencia se dictó a base de un acuerdo ineficaz debido a las actuaciones contradictorias emitidas sobre un mismo acuerdo de alegación de culpabilidad por parte de dos jueces distintos en el Tribunal de Primera Instancia, Sala de Bayamón. Si la respuesta a lo anterior es en la afirmativa, hay que evaluar si procede un remedio al

amparo de la Regla 192.1 de Procedimiento Criminal, ibíd.

La figura jurídica de la alegación preacordada o *plea bargaining* se originó en Inglaterra a partir del Siglo XV. La Fave, Israel, King, Criminal Procedure, 2da. ed., St. Paul Minn., West Group, 1999, Vol. 5, págs. 6-7. Véase, además, North Carolina v. Alford, 400 U.S. 25 (1970). Sin embargo, no es hasta mediados del siglo XX que comienza a institucionalizarse como práctica usual en la disposición de los casos. La Fave, Israel, King, Criminal Procedure, op. cit. Una de las razones principales para adoptar dicha figura jurídica fue la conveniencia administrativa que representaba poder utilizar un sistema donde se dispusiera de los casos criminales sin la celebración de un juicio plenario. La Fave, Israel, King, Criminal Procedure, id., pág. 9, citando a Enker, Perspectives on Plea Bargaining, in President´s Comm'n on Law Enforcement and Administration of Justice, Task Force Report: The Courts 108, 112 (1967): "[T]he most commonly asserted justification of plea bargaining is its utility in disposing of large numbers of cases **in a quick and simple way**" (énfasis suplido).

Esta conveniencia administrativa, entre otras ventajas, llevó al Tribunal Supremo federal a aceptar el sistema de alegaciones preacordadas, ya que sin ellas sería muy difícil, si no imposible, enjuiciar a todos los acusados dentro de los términos dictados por el

ordenamiento procesal y la Constitución. Véanse, Santobello v. New York, 404 U.S. 257 (1971); Pueblo v. Figueroa García, 129 D.P.R. 798 (1992). Como dijo el Tribunal Supremo federal en Blackledge v. Allison, 431 U.S. 63, 71 (1977):

> *Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargaining are important components of this country's criminal justice system. **Properly administered, they can benefit all concerned*** [énfasis suplido].

Como consecuencia de este aval judicial al mecanismo de la alegación preacordada, en el 1974 el Congreso enmendó la Regla 11 de Procedimiento Criminal federal, 18 U.S.C. R. 11, para regular el procedimiento a seguir al realizar los llamados *plea bargains*. En Puerto Rico, en Pueblo v. Mojica Cruz, 115 D.P.R. 569 (1984), reconocimos la validez constitucional del mecanismo de las alegaciones preacordadas así como la utilidad que ello representa para la disposición de los casos penales. Véase, además, Pueblo v. Suarez, 162 D.P.R. 172 (2004). Luego de este aval judicial local, la Asamblea Legislativa de Puerto Rico aprobó la Regla 72 de Procedimiento Criminal, 34 L.P.R.A. Ap.II R. 72, para codificar expresamente los requisitos que se tienen que cumplir al realizar la alegación preacordada, de manera que ésta pueda dar base a una sentencia condenatoria.

Entre otras cosas, para que este acuerdo tenga efecto jurídico, es necesario que tenga la aceptación del tribunal. La función del juez está detallada en el

inciso (7) de la Regla 72, ibíd. Este inciso establece que cuando se presenta el acuerdo ante el tribunal, el juez tiene que ponderar si acepta o rechaza la alegación de culpabilidad mediante una evaluación de si: (1) la alegación fue hecha con pleno conocimiento, conformidad y voluntariedad del imputado; (2) ésta es conveniente a una sana administración de la justicia; y (3) se logró conforme a derecho y a la ética. Si el acuerdo no satisface estos requisitos, entonces el juez tiene que rechazarlo. Además, el juez deberá cerciorarse de que existe base suficiente en los hechos para sostener que el acusado resultaría culpable más allá de duda razonable en caso de llevarse a cabo un juicio. Pueblo v. Santiago Agricourt, 147 D.P.R. 179 (1998). Véase, además, Pueblo v. Cintrón Antonsanti, 148 D.P.R. 39 (1999) (Sentencia).

En reiteradas ocasiones hemos enfatizado que una vez el tribunal acepta el acuerdo, éste queda "consumado". Pueblo v. Santiago Agricourt, supra, pág. 194. Es por esta razón que antes de que el tribunal haya aceptado el acuerdo, cualquiera de las partes puede retirar su oferta. Precisamente, en Pueblo v. Figueroa, supra, resolvimos que cuando el tribunal acepta el acuerdo y el acusado hace la correspondiente alegación de culpabilidad, las partes no pueden retirar lo acordado, por lo que cualquier intento a tales efectos es un incumplimiento del acuerdo. Véase además, E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y

Estados Unidos, Ed. Forum, 1993, Vol. III, págs. 294-295.

En Pueblo v. Figueroa García, supra, establecimos la diferencia entre un acuerdo refrendado por el tribunal y uno que no goza de dicha aceptación. Cuando el acuerdo es aceptado por el tribunal y el acusado hace alegación de culpabilidad, las partes están vinculadas por lo pactado. Esto responde a que con la aceptación del acuerdo y la alegación de culpabilidad, el acusado renuncia a valiosos derechos constitucionales como es el derecho a que se pruebe su culpabilidad más allá de duda razonable y el derecho a un juicio en su fondo, entre otros. Véase, Pueblo v. Figueroa García, id., pág. 807. Por tanto, una vez el tribunal acepta el acuerdo y el acusado hace la alegación de culpabilidad, quedan implicados los derechos constitucionales del acusado. A tales efectos, el Tribunal Supremo federal dijo en Mabry v. Johnson, 467 U.S. 504, 507-508 (1984):

> *A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest.* **It is the ensuing guilty plea that implicates the constitution.** [Énfasis suplido.]

En ese sentido, es posible colegir que luego de la aceptación del tribunal y de la correspondiente alegación de culpabilidad cualquier acto en detrimento del acuerdo no imputable al acusado, como podría ser que

el Ministerio Público quisiera dejar sin efecto lo acordado, afecta los derechos constitucionales del acusado. Véase, Pueblo v. Figueroa García, id., pág. 808.

Como señaló el Tribunal Supremo federal en Santobello v. New York, supra, cuando hay incumplimiento del acuerdo por parte del Ministerio Público, procede devolver el caso al tribunal sentenciador para que dé un remedio al acusado, ya sea que se le permita retirar la alegación de culpabilidad o se ordene el cumplimiento específico del acuerdo por parte del Ministerio Público. Al así decidir, el Tribunal Supremo federal señaló:

> *This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.*

> Santobello v. New York, id., pág 499.

Así también, en Puckett v. United States, ___ U.S. ___, 129 S. Ct. 1423, 1430; 173 L. Ed. 266 (2009), el Tribunal Supremo federal señaló:

> *When a defendant agrees to a plea bargain, the Government takes on certain obligations. If those obligations are not met, the defendant is entitled to seek a remedy, which might in some cases be rescission of the agreement, allowing him to take back the consideration he has furnished, i.e., to withdraw his plea. But rescission is not the only possible remedy; in Santobello we allowed for resentencing at which the Government would fully comply with the agreement-in effect, specific performance*

> *of the contract … In any case, it is entirely clear that a breach does not cause the guilty plea, when entered, to have been unknowing or involuntary. It is precisely because the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain.*

Ahora bien, la normativa antes expuesta discute el efecto jurídico del acuerdo incumplido por parte del Ministerio Público. A modo ilustrativo, es meritorio señalar que los tribunales federales se han enfrentado a controversias donde el juez que acepta el acuerdo luego se niega a darle cumplimiento o lo rechaza. Véase, United States v. Ritsema, 89 F.3d 392 (7th Cir. 1996); United States v. Blackwell, 694 F.2d 1325 (C.D.A.C. 1982). Al interpretar la Regla 11 de Procedimiento Criminal federal, supra, en United States v. Blackwell, id., pág. 1338, el tribunal intermedio federal señaló:

> *[A]s pointed out in Santobello, 404 U.S. at 262, 92 S. Ct. at 499, there is no absolute right to have a guilty plea accepted, and [a] court may reject a plea in exercise of sound judicial discretion, once a judge has accepted a plea and bound the defendant to it, she cannot, except possibly for fraud, refuse to carry through on the bargain.*

Añadió el tribunal:

> *Pleas that bind only the defendant, or even the prosecutor and the defendant, but not the judge, would be unfair to the defendant and would dilute the incentive for defendant´s to plead at all.… The judge´s faithful observance of the requirements of Rule 11 is just as vital to the fairness and efficiency of the process as the prosecutor´s compliance. She has a primary duty under that rule to insure not only that the terms of the bargain are understood by the defendant but that they are adhered to both sides, **as well as by the court itself.***

Id., pág 1339 [énfasis suplido].

Una vez el acusado hace la correspondiente alegación de culpabilidad y el tribunal la acepta, el juez no puede rechazar el acuerdo posteriormente. Como bien discutimos anteriormente, el fundamento para no avalar el incumplimiento del Ministerio Público con los términos del acuerdo aceptado por el tribunal es el menoscabo de los derechos constitucionales del acusado, quien renuncia a éstos con el entendido de que se cumplirá lo convenido. El mismo razonamiento debe seguirse en los casos donde es el tribunal el que provoca el incumplimiento de lo pactado.

Ahora bien, ¿qué ocurre cuando, como ocurrió en este caso, un juez acepta el acuerdo y luego otro juez lo rechaza? Conforme con lo antes discutido, concluimos que el efecto es el mismo. Una vez el tribunal acepta el acuerdo y el acusado hace la correspondiente alegación de culpabilidad quedan implicados los derechos constitucionales del acusado, quien tiene derecho a que lo acordado y aceptado se cumpla en su totalidad. Por tanto, una vez el acusado hace la alegación de culpabilidad y el tribunal, como institución, acepta el acuerdo, el juez no puede rechazarlo posteriormente. Lo contario sería permitir que después que el acusado hace alegación de culpabilidad por confiar en el acuerdo aceptado, el tribunal revierta su determinación y sentencie al acusado sin considerar lo acordado. Esto sin duda menoscabaría los derechos del acusado. Además

le restaría efectividad a las alegaciones preacordadas, por temor a que los acuerdos una vez aceptados puedan ser rechazados por el tribunal. Esto sin duda vulneraría el propósito para el que se adoptó este tipo de mecanismo procesal: la conveniencia administrativa que representa la rápida solución de casos sin los costos que conllevan los juicios plenarios.

Conforme con esta normativa, procedemos a evaluar la primera interrogante, a saber, si las actuaciones contradictorias por parte de los jueces del Tribunal de Primera Instancia, Sala de Bayamón, dejaron sin efecto y como consecuencia, imposibilitaron el cumplimiento del convenio de alegación preacordada suscrito por el Ministerio Público y el recurrido, Pérez Adorno.

III

La Regla 72 de Procedimiento Criminal, supra, establece que el acuerdo suscrito entre el acusado y el Ministerio Público tendrá que ser aprobado por el tribunal. En este caso hubo dos actuaciones contradictorias sobre un mismo acuerdo por parte de dos jueces del Tribunal de Primera Instancia, a saber, la aprobación del acuerdo en la sala 605 y su rechazo en la sala 602. Para este análisis es meritorio adentrarnos en la discusión sobre lo acordado en el convenio de alegación preacordada que dio lugar a la presente controversia.

Según mencionamos anteriormente, el acuerdo establecía que el acusado-recurrido, Pérez Adorno, haría

una alegación de culpabilidad por todos los delitos presentados en su contra en el Tribunal de Primera Instancia, Sala de Bayamón, a saber: (1) los delitos presentados ante la sala 605, y (2) los casos de robo "pendientes en el tribunal relacionados con hechos ocurridos el 24 de septiembre de 2001, el 12 de octubre de 2001, el 22 de octubre de 2001, el 28 de octubre de 2001, el 12 de noviembre de 2001 y el 15 de noviembre de 2001" para una pena de diez (10) años, concurrente en todos los casos incluidos en el acuerdo.[2] En ese sentido, cuando el acusado hizo alegación de culpabilidad preacordada ante la sala 605 y el tribunal aceptó el acuerdo, el recurrido Pérez Adorno abdicó sus derechos constitucionales y estatutarios entre los que

---

[2] En su alegato, el Ministerio Público señaló, sin fundamentar, que el acuerdo en controversia no incluía los casos presentados en la sala 602. Por tanto, adujo que el rechazo de la sala 602 no afectó la sentencia dictada en la sala 605. No le asiste la razón al Ministerio Público. El acuerdo no señala específicamente la sala en que se estarían presentando los demás casos. Sin embargo, la ambigüedad que pudiera adolecer el acuerdo es imputable al propio Ministerio Público, quien en definitiva es el encargado de suscribir los términos del acuerdo de alegación. De todas formas, la doctrina establece que cuando hay problemas de interpretación en los acuerdos de alegaciones preacordadas, éstas deben interpretarse a favor del acusado. G.N. Herman, Plea Bargaining, 2da ed., N.J., Lexis Nexis, 2004, Sec. 12:04, pág. 240. Debido a que están en juego los derechos fundamentales del acusado, el fiscal deber ser sumamente meticuloso en la redacción de los términos de la alegación. United States v. Ingram, 979 F.2d 1179 (7th Cir. 1992); United States v. Bowler, 585 F.2d 851 (7th Cir. 1978); Correale v. United States, 479 F.2d 944 (1st Cir. 1973). Es responsabilidad del Ministerio Público asegurar la claridad y eliminar las ambigüedades de la alegación preacordada. United States v. Giorgi, 840 F.2d 1022 (1st Cir. 1988).

se encuentran, el derecho a que se establezca su culpabilidad más allá de duda razonable, el derecho a un juicio justo, el derecho a ser juzgado, a presentar evidencia y a rebatir la prueba presentada en su contra. En ese momento quedó "consumado" el acuerdo. Cuando el acusado renunció a sus derechos lo hizo con el entendido de que se cumpliría con los términos del acuerdo suscrito por las partes, esto es, que se le condenaría a una pena de reclusión de diez (10) años concurrentes por todos los delitos presentados en su contra en el Tribunal de Primera Instancia, Sala de Bayamón. Ésta es la causa que dio lugar al convenio de alegación preacordada. El acusado no renunció a sus derechos a cambio de que se le condenara a una pena de (10) años concurrentes solamente en los casos presentados en la sala 605.

Conforme con lo anterior, cuando el juez de la sala 602 rechazó el acuerdo de alegación de culpabilidad provocó la imposibilidad del cumplimiento del acuerdo en su totalidad y que el acusado pudiera recibir el beneficio que lo llevó a negociar con el Ministerio Público, esto es la pena acordada de diez (10) años concurrentes por todos los delitos presentados en el Tribunal de Primera Instancia. En ese sentido, dicho rechazo provocó el incumplimiento del acuerdo ya que el Ministerio Público no iba a poder honrar su parte. Al respecto, nada importa que se tratara de jueces diferentes. Recordemos que el Tribunal de Primera

Instancia es una sola institución. Por eso, concluimos que un mismo tribunal tomó actuaciones contradictorias que dejaron sin efecto el acuerdo de alegación que suscribió el acusado, a base del cual éste hizo la alegación de culpabilidad.

Cuando un acuerdo incluye casos que no están ante un solo juez, existe el riesgo de que un juez rechace el mismo acuerdo que otro juez aprobó. También puede que el acusado o el Ministerio Público decidan no sostener sus respectivas ofertas en todas las salas en que se presente el acuerdo. Esto tiene el efecto de: (1) crear dictámenes contradictorios por parte de un mismo tribunal, y (2) que el acuerdo aprobado pueda ser atacado en múltiples instancias por las partes que lo suscribieron. En ese sentido, este tipo de acuerdo no promueve la sana administración de la justicia que exige la Regla 72, _ibíd_. Cabe señalar que para evitar situaciones como la de autos al evaluar el acuerdo de alegación de culpabilidad que se le presenta, el juez debe sopesar si el acuerdo conviene a la sana administración de la justicia, según lo exige la propia regla.

Así pues, cuando se presenta ante el tribunal un acuerdo de alegación que incluye casos que no están presentados en una misma sala, o en un mismo tribunal, el juez debe indicar a las partes que la aprobación del acuerdo está sujeta a que se haga cualquiera de las siguientes alternativas: (1) que se consoliden los casos

si son consolidables; (2) que se trasladen a esa sala los casos pendientes incluidos en el acuerdo, incluyendo los casos presentados en otras salas del Tribunal de Primera Instancia, si el acusado consiente a ello; ó (4) que el acusado consienta a hacer una alegación de culpabilidad a sabiendas de que la vigencia del acuerdo en los demás casos está sujeta a que tiene que ser presentado y aceptado en cada una de las salas donde esos casos están pendientes.

De no lograrse lo anterior, el juez deberá rechazar el acuerdo a base de que (1) no se puede determinar si éste es conforme a derecho y (2) éste no promueve una sana administración de la justicia. De esta forma se evita que en futuros casos se violen los derechos constitucionales del acusado cuando se utilicen acuerdos como el de autos y, por tanto, se evita que se pueda atacar la sentencia por el fundamento de que hay dictámenes contradictorios sobre un mismo acuerdo, o que el acuerdo se dejó sin efecto ya sea por el acusado o por el Ministerio Público en otra sala.

## IV-A

Una vez resuelto que el rechazo en la sala 602 dejó sin efecto el acuerdo de alegación de culpabilidad, nos corresponde determinar si procede el relevo de la sentencia al amparo de la Regla 192.1 de Procedimiento Criminal, supra.

Como norma general, una sentencia dictada en casos de convicción por alegación de culpabilidad sólo será

revisada mediante la interposición de un recurso de *certiorari*. Regla 193 de Procedimiento Criminal, supra, R. 193. "Sin embargo, el hecho de que un acusado haya sido convicto mediante una alegación de culpabilidad no impide un ataque directo a la validez de la alegación o colateral de la sentencia de convicción dictada como resultado de la alegación de culpabilidad". Pueblo v. Santiago Agricourt, supra, págs. 210-211. Conforme con lo anterior, hemos resuelto que la sentencia puede estar sujeta a un ataque colateral si la alegación de culpabilidad no fue efectuada inteligentemente. Ibíd.

Además, hemos resuelto que un ciudadano convicto mediante alegación de culpabilidad puede atacar la validez de la sentencia condenatoria, al amparo de la Regla 192.1, supra, si cuenta con un planteamiento o defensa meritoria de debido proceso de ley. Pueblo v. Montero Luciano, 169 D.P.R. 36 (2006). Dicha regla autoriza a cualquier persona que se encuentre detenida en virtud de sentencia condenatoria, a presentar una moción en la sede del Tribunal de Primera Instancia que la dictó, con el objetivo de que sea anulada, dejada sin efecto o corregida, en circunstancias en que se alegue el derecho a ser puesto en libertad por cualquiera de los fundamentos siguientes:

> (1) La sentencia fue impuesta en violación de la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o la Constitución y las leyes de Estados Unidos; o

> (2) el tribunal no tenía jurisdicción para imponer dicha sentencia; o

(3) la sentencia impuesta excede de la pena prescrita por la ley, o

(4) la sentencia está sujeta a ataque colateral por cualquier motivo....

Regla 192.1, supra.

La moción al amparo de la Regla 192.1, id., puede presentarse ante el tribunal sentenciador en cualquier momento, después de dictada sentencia, incluso cuando ésta haya advenido final y firme. La regla requiere que se incluyan en la moción todos los fundamentos que tenga el peticionario para solicitar el remedio provisto en ella, por lo que se considerarán renunciados los fundamentos no incluidos en la moción, a menos que el tribunal, con base en un escrito subsiguiente, determine razonable que tales fundamentos no pudieron presentarse en la moción original. Bajo este mecanismo, la cuestión a plantearse es si la sentencia impugnada está viciada por un error fundamental que contradice la noción más básica y elemental de lo que constituye un procedimiento criminal justo.

Conforme con lo anterior, una moción al amparo de la Regla 192.1 de Procedimiento Criminal, id., procederá cuando, entre otras circunstancias, la sentencia esté sujeta a un ataque colateral por un fundamento válido. Esta regla se estableció para poner orden a la profusión indiscriminada de solicitudes de *hábeas corpus*, en las que se cuestionaba colateralmente la validez de una sentencia condenatoria en una sala distinta a la que la

había dictado. Véase, <u>Rabell v. Alcaides Cárceles de P.R.</u> 104 D.P.R. 96 (1975). Con ese propósito, la Regla 192.1 de Procedimiento Criminal, <u>supra</u>, establece un recurso similar al que se autoriza mediante el recurso extraordinario de *hábeas corpus*, en el que se requiere que estos cuestionamientos colaterales se planteen en primera instancia ante la sala del tribunal que dictó la sentencia condenatoria.

Este recurso bajo la Regla 192.1, <u>id.</u>, sólo está disponible cuando la sentencia adolece de un defecto fundamental que conlleva inevitablemente una violación al debido proceso de ley. Por ello, salvo circunstancias excepcionales, no se concederá en sustitución del recurso ordinario de apelación. Véanse, <u>Otero v. Alguacil</u>, 116 D.P.R. 733 (1985); D. Rivé Rivera, <u>Recursos Extraordinarios</u>, San Juan, Universidad Interamericana de Puerto Rico, 2da ed., 1996, págs. 181-184.

Como hemos enfatizado en ocasiones anteriores, no obstante la amplitud del lenguaje empleado por la Regla 192.1, <u>supra</u>, los fundamentos para revisar una sentencia bajo este mecanismo se limitan a cuestiones de derecho, por lo que el precepto no puede ser empleado para levantar cuestiones de hechos que hubieren sido adjudicadas por el tribunal. Véase, <u>Pueblo v. Ruiz Torres</u>, 127 D.P.R. 612 (1990). Se trata de un mecanismo para cuestionar la legalidad de la sentencia, no su

corrección, a la luz de los hechos. Pueblo v. Marcano Parrilla, 152 D.P.R. 557 (2000).

B

En este caso hubo dos dictámenes contradictorios por parte de un mismo tribunal, sobre el convenio de alegación preacordada. Estas actuaciones provocaron la imposibilidad del cumplimiento del convenio. En este caso, el acusado-recurrido Pérez Adorno hizo una alegación de culpabilidad bajo el entendido de que el acuerdo se cumpliría en su totalidad, es decir que el acuerdo se "consumaría". Como en este caso el acuerdo no puede ser cumplido, no es posible sostener la sentencia, ya que la misma se dictó en detrimento de los derechos constitucionales del acusado. Las actuaciones contradictorias del Tribunal de Primera Instancia, Sala de Bayamón, no son cónsonas con el principio de debido proceso de ley que debe imperar en el procedimiento criminal que se instó contra el recurrido, Pérez Adorno. Además, en ningún momento surge del convenio ni de la minuta del juez de la sala 605, que se le informara al acusado que la aceptación del acuerdo se limitaba a los casos presentados en esa sala. Ante esta realidad y el posterior rechazo del acuerdo, resolvemos que la sentencia dictada a base de la alegación preacordada no puede sostenerse.

Bajo la norma de Santobello v. New York, supra, reiterada en Puckett v. United States, supra, en casos de incumplimiento del acuerdo procede la devolución del

caso al tribunal sentenciador para que éste determine qué remedio otorgar al acusado, ya sea el cumplimiento específico de lo acordado o el retiro de la alegación de culpabilidad.[3] Sin embargo, como mencionamos anteriormente, esa norma se circunscribe a lo que ocurre cuando el incumplimiento es atribuible al Ministerio Público. Por el contrario, en este caso el incumplimiento no es atribuible al Ministerio Público, ya que la imposibilidad para cumplir el acuerdo fue producto de las actuaciones contradictorias del Tribunal de Primera Instancia. Además, en este caso no es posible ordenar el cumplimiento específico de lo acordado –esto es, una pena de diez (10) años por todos los casos presentados en la salas del Tribunal de Primera Instancia, Sala de Bayamón– ya que los casos de la sala 602 fueron sobreseídos con perjuicio. Al ser así, el único remedio disponible al acusado en este caso es permitirle el retiro de la alegación de culpabilidad de modo que se lleve a cabo el juicio con todos los derechos constitucionales que le cobijan. Procede el relevo de la sentencia al amparo de la Regla 129.1 de Procedimiento Criminal, supra, R. 129.1.

---

[3] Existe discusión en la doctrina sobre cuál de éstos debe ser el remedio a conceder, según las circunstancias del caso. Véase, La Fave, Israel, King, op. cit., págs. 83-95. Sin embargo, como en este caso no es posible el cumplimiento específico de lo acordado, no es necesario entrar en la discusión sobre este particular.

V

Por los fundamentos antes expuestos, se confirma la sentencia del Tribunal de Apelaciones que dejó sin efecto la sentencia dictada por el foro primario y la alegación de culpabilidad que hiciera el recurrido Pérez Adorno. De conformidad con lo anterior, se devuelve el caso al Tribunal de Primera Instancia, Sala de Bayamón, para que el recurrido Pérez Adorno sea juzgado en los méritos por los delitos según fueron presentados por el Ministerio Público en la Sala 605.

Se dictará Sentencia de conformidad.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.

                         CC-2006-597

Jorge L. Pérez Adorno

    Recurrido

*SENTENCIA*

En San Juan, Puerto Rico, a 5 de mayo de 2010.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma la sentencia del Tribunal de Apelaciones que dejó sin efecto la sentencia dictada por el foro primario y la alegación de culpabilidad que hiciera el recurrido Pérez Adorno. De conformidad con lo anterior, se devuelve el caso al Tribunal de Primera Instancia, Sala de Bayamón, para que el recurrido Pérez Adorno sea juzgado en los méritos por los delitos según fueron presentados por el Ministerio Público en la Sala 605.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Presidente señor Hernández Denton y la Juez Asociada señora Rodríguez Rodríguez concurren con el resultado sin Opinión escrita. El Juez Asociado señor Rivera Pérez no intervino. La Jueza Asociada señora Pabón Charneco no interviene.

                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo